UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x
                              :

| | | |
|---|---|---|
| In re: | : | In a Case Under Chapter 15 |
| | : | of the Bankruptcy Code |
| Petition of Oversight and Control | : | |
| Commission, as Foreign Representative | : | Case No. 07-13765 (SMB) |
| | : | |
| Debtor in a Foreign Proceeding. | : | Chief Judge |
| | : | Stuart M. Bernstein |

--------------------------------------------------------x


# MEMORANDUM OF LAW
## IN OPPOSITION TO APPLICATION FOR RECOGNITION AND IN
## SUPPORT OF MOTION TO DISMISS CHAPTER 15 PETITION OR FOR
## <u>SUMMARY JUDGMENT DISMISSING THE PETITION</u>


DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Attorneys for BNP Paribas Andes, S.A.*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF THE CASE ............................................................................ 4

A. The Parties, the Mutual Underlying Obligations and the Setoff ................. 4

B. Avanzit's Temporary Insolvency Proceeding ............................................. 5

C. Avanzit's Suit in Spain to Invalidate the Setoff and the Spanish
   Decision Dismissing Its Complaint ............................................................. 6

D. The Peruvian Litigation Involving the Setoff ............................................. 7

E. The End of Avanzit's Temporary Insolvency Proceeding ......................... 11

F. BNPP Andes Has No U.S. Assets ............................................................. 13

G. The September 2007 Application to the Spanish Court ............................ 13

H. The Chapter 15 Petition and *Ex Parte* Relief ............................................ 15

ARGUMENT: THE CHAPTER 15 PETITION MUST BE DISMISSED ........... 16

A. Dismissal or Summary Judgment Is Appropriate ..................................... 16

B. Recognition May Not Be Granted Under Chapter 15 ............................... 16

   1. No Foreign Proceeding Is Pending ...................................................... 17

   2. The Spanish *Ex* Parte Order Does Not Control ................................... 21

   3. The Petition Is Defective ..................................................................... 24

   4. This Court Has No Personal Jurisdiction over BNPP Andes .............. 25

C. The Commission Is Not a "Foreign Representative" ................................ 26

D. The Relief Sought by the Commission Cannot Be Granted ..................... 28

   1. No Avanzit Asset Is in the United States ............................................. 29

   2. Comity Requires Recognition of the Spanish Court's Order and
      Deference to the Peruvian Litigation ................................................. 32

CONCLUSION ................................................................................................. 34

i

TABLE OF AUTHORITIES

<u>C</u>ASES

<u>P</u>AGE

*Amalgamated Sugar Co. v. NL Indus.*,
    825 F.2d 634 (2d Cir. 1987) ........................................................................ 32

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................... 16

*In re Basis Yield Alpha Fund (Master)*,
    Case No. 07-12762 (REG) (Bankr. S.D.N.Y. Jan. 16, 2008) ............ 18,20,21,28

*In re Bd. of Directors of Telecom Argentina, S.A.*,
    No. 05-17811 (BRL), 2006 Bankr. LEXIS 483
    (Bankr. S.D.N.Y. Feb. 24, 2006),
    *aff'd*, No. 06 Civ. 2352 (NRB), 2006 U.S. Dist. LEXIS 85274
    (S.D.N.Y. Nov. 17, 2006) ............................................................................. 28

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
    374 B.R. 122 (Bankr. S.D.N.Y. 2007) ........................................... 17,18,27,28

*In re Compania de Alimentos Fargo, S.A.*,
    376 B.R. 427 (Bankr. S.D.N.Y. 2007) .......................................................... 25

*In re Craig's Stores of Tex., Inc.*,
    266 F.3d 388 (5th Cir. 2001) ........................................................................ 23

*Cunard S.S. Co. v. Salen Reefer Servs. A.B.*,
    773 F.2d 452 (2d Cir. 1985) ......................................................................... 33

*Folger Adam Sec., Inc. v. DeMatteis/MacGregor, J.V.*,
    209 F.3d 252 (3d Cir. 2000) ......................................................................... 30

*Fuentes v. Shevin*,
    407 U.S. 67 (1972) ...................................................................................... 24

*In re Grandote Country Club Co.*,
    252 F.3d 1146 (10th Cir. 2001) .................................................................... 24

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
    527 U.S. 308 (1999) ................................................................................. 31-32

*Hilton v. Guyot*,
  159 U.S. 113 (1895) ....................................................................................... 33

*Int'l Nutrition Co. v. Horphag Research Ltd.*,
  257 F.3d 1324 (Fed. Cir. 2001) ...................................................................... 33

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*,
  295 F. Supp. 2d 366 (S.D.N.Y. 2003) ............................................................. 32

*In re Jacobowitz*,
  309 B.R. 429 (S.D.N.Y. 2004) ....................................................................... 16

*Jayaraj v. Scappini*,
  66 F.3d 36 (2d Cir. 1995) ............................................................................... 31

*Kuhali v. Reno*,
  266 F.3d 93 (2d Cir. 2001) ............................................................................. 30

*Lerman v. Bd. of Elections*,
  232 F.3d 135 (2d Cir. 2000) ........................................................................... 30

*Majorica, S.A. v. R.H. Macy & Co.*,
  762 F.2d 7 (2d Cir. 1985) ............................................................................... 32

*In re Milovanovic*,
  357 B.R. 250 (Bankr. S.D.N.Y. 2006) ............................................................ 28

*Morris v. City of N.Y.*,
  No. 05 Civ. 7368, 2007 U.S. Dist. LEXIS 14765 (S.D.N.Y. Mar. 1, 2007)....24-25

*Murphy Bros. v. Michetti Pipe Stringing, Inc.*,
  526 U.S. 344 (1999) ....................................................................................... 26

*NLRB v. Donna-Lee Sportswear Co.*,
  836 F.2d 31 (1st Cir. 1987) ............................................................................ 32

*Northwest Airlines Corp. v. Ass'n of Flight Attendants-CWA*,
  483 F.3d 160 (2d Cir. 2007) ........................................................................... 31

*In re Parmalat Secs. Litig.*,
  493 F. Supp. 2d 723 (S.D.N.Y. 2007), *aff'd*,
  240 F. App'x 916 (2d Cir. 2007) ..................................................................... 28

iii

*Pennoyer v. Neff,*
    95 U.S. 714 (1878), *overruled on other grounds by*
    *Shaffer v. Heitner*, 433 U.S. 186 (1977)............................................................ 26

*In re Pet. of Bd. of Directors of Hopewell Int'l Ins. Ltd.*,
    238 B.R. 25 (Bankr. S.D.N.Y. 1999), *aff'd*, 275 B.R. 699 (S.D.N.Y. 2002)... 20

*Pettibone Corp. v. Easley,*
    935 F.2d 120 (7th Cir. 1991)........................................................................... 23

*Pioneer Commercial Funding Corp. v. United Airlines Inc.*,
    122 B.R. 871 (S.D.N.Y. 1991)........................................................................ 30

*Pravin Banker Assocs. v. Banco Popular Del Peru,*
    109 F.3d 850 (2d Cir. 1997)............................................................................ 33

*Rodriguez v. DeBuono,*
    175 F.3d 227 (2d Cir. 1998)............................................................................ 31

*Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*,
    466 F.3d 88 (2d Cir. 2006).............................................................................. 34

*Somportex, Ltd. v. Philadelphia Chewing Gum Corp.*,
    453 F.2d 435 (3d Cir. 1971)........................................................................... 24

*In re SPhinX, Ltd.*
    351 B.R. 103 (Bankr. S.D.N.Y. 2006),
    *aff'd,* 371 B.R. 10 (S.D.N.Y. 2007) ........................................................ 21,28

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ..................................................................................... 29-30

*In re Teligent Inc.*,
    324 B.R. 479 (S.D.N.Y. 2005) ....................................................................... 16

*U.S. v. Bank of Celina,*
    721 F.2d 163 (6th Cir. 1983)........................................................................... 30

*U.S. v. J.A. Jones Constr. Group, LLC,*
    333 B.R. 637 (E.D.N.Y. 2005)........................................................................ 28

## S<small>TATUTES</small> & R<small>ULES</small>

11 U.S.C. § 101(23) ................................................................ 2,19,22

11 U.S.C. § 101(24) ................................................................ 2,20,27

11 U.S.C. § 1501(b)(1) ................................................................ 2

11 U.S.C. § 1502 ................................................................ 18,19,20

11 U.S.C. § 1502(4) ................................................................ 19

11 U.S.C. § 1502(5) ................................................................ 19

11 U.S.C. § 1504 ................................................................ 17

11 U.S.C. § 1509(b) ................................................................ 17

11 U.S.C. § 1515 ................................................................ 17

11 U.S.C. § 1517 ................................................................ 17,18

11 U.S.C. § 1517(a) ................................................................ 18

11 U.S.C. § 1517(1) ................................................................ 19

11 U.S.C. § 1520 ................................................................ 23,29

11 U.S.C. § 1520(a)(3) ................................................................ 23

11 U.S.C. § 1521 ................................................................ 23,29

11 U.S.C. § 1531 ................................................................ 23

28 U.S.C. § 1410(3) ................................................................ 26

Fed. R. Bankr. P. 1008 ................................................................ 24

Fed. R. Bankr. P. 7004(a) ................................................................ 26

Fed. R. Bankr. P. 7004(f) ................................................................ 26

Fed. R. Bankr. P. 7056 ................................................................... 16,25

Fed. R. Civ. P. 56(c) ...................................................................... 16

Fed. R. Civ. P. 56(e) ...................................................................... 25

Fed. R. Evid. 701 ........................................................................... 25

Fed. R. Evid. 702 ........................................................................... 25

Fed. R. Evid. 801 ........................................................................... 25

Fed. R. Evid. 802 ........................................................................... 25

## OTHER AUTHORITIES

16 *Moore's Federal Practice* § 108.02 (3d ed. 1997) ........................................... 25

Andre J. Berends, *UNCITRAL Model Law on Cross-Border Insolvency:*
   *The UNCITRAL Model Law on Cross-Border Insolvency: A Comprehensive*
   *Overview*, 6 Tul. J. Int'l & Comp. L. 309 (1998) ........................................... 22

H.R. Rep. No. 109-31 (2005) ........................................................... 18,30

Paul L. Lee*, Ancillary Proceedings Under Section 304 and Proposed*
   *Chapter 15 of the Bankruptcy Cod*e,
   76 Am. Bankr. L.J. 115 (2002) ....................................................... 21

Restatement (Third) of Foreign Relations Law § 481 (1986) .............................. 33

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------x
                                                  :
In re:                                            :        In a Case Under Chapter 15
                                                  :        of the Bankruptcy Code
Petition of Oversight and Control                 :
Commission, as Foreign Representative             :        Case No. 07-13765 (SMB)
                                                  :
Debtor in a Foreign Proceeding.                   :        Chief Judge
                                                  :        Stuart M. Bernstein
------------------------------------------------------x
```

BNP Paribas Andes, S.A. ("BNPP Andes"), a Peruvian bank that is a

subsidiary of BNP Paribas, one of the world's leading financial institutions, files

this memorandum in opposition to the Application Under Chapter 15 for

Recognition of Foreign Main Proceeding of Avanzit, S.A. ("Avanzit"), and in

support of BNPP Andes' motion to dismiss or for summary judgment dismissing

the petition of the Oversight and Control Commission of Avanzit (the

"Commission") under Chapter 15 of the United States Bankruptcy Code (together

with the Application for Recognition, the "Petition").[1]

## PRELIMINARY STATEMENT

The Petition should be dismissed forthwith.  Avanzit and BNPP Andes

have been litigating over the setoff that is the subject of the Petition for almost

four years, in Spain and in Peru.  The Commission's repeated resort to *ex parte*

applications is unwarranted, and its use of Chapter 15 is entirely inappropriate.

---

[1]BNPP Andes files this memorandum of law and accompanying papers on behalf of itself and, to the extent necessary, on behalf of the New York branch of BNP Paribas, which was also named as a respondent in the Petition.  BNPP Andes does not, by submitting these papers, concede that it is subject to the *in personam* jurisdiction of the Court.

Chapter 15 of the United States Bankruptcy Code authorizes the courts of this country to recognize only a "foreign proceeding" that is presently pending, and then only upon the request of a proper "foreign representative." 11 U.S.C. § 1501(b)(1) (2006). A "foreign proceeding" is defined as "a collective judicial or administrative proceeding . . . under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor *are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation*." *Id.* § 101(23) (emphasis added). A "foreign representative" is defined as "a person or body . . . authorized in a foreign proceeding *to administer the reorganization or the liquidation of the debtor's assets or affairs* or to act as a representative of *such foreign proceeding*." *Id.* § 101(24) (emphasis added).

The Commission alleges that Avanzit is presently subject to a *suspensión de pagos*, or suspension of payments proceeding, under Spanish law. As the Petition accurately states, such a proceeding would involve "a compulsory moratorium on payment of the debtor's debts," that "seeks a judicially-controlled arrangement or composition (Convenio) between the business and its creditors . . . to enable the business to restore its finances and return to a situation where it is able to pay its debts in time." Pet. ¶ 12.

The Commission's position that Avanzit is presently subject to such a proceeding, however, is a flat misrepresentation. Avanzit is not subject to an insolvency or *suspensión de pagos* proceeding at this time, as Avanzit has proudly and repeatedly declared for the last four years in filings with the *Comisión*

*Nacional del Mercado de Valores* ("CNMV"), the Spanish equivalent of the

Securities and Exchange Commission. In January 2004, Avanzit disclosed that

> "Avanzit, S.A. hereby reports that as a result of the court approval of the agreement and lifting of the bankruptcy reorganization that affected the company, and since the established procedural time periods have elapsed, the Bankruptcy Trustees that were appointed at one time HAVE BEEN DISCHARGED from their duties. Thus, the company has recovered its full legal capacity, and for the purpose of carrying out any acts of administration and/or disposal or encumbrance, it is not subject to any restrictions whatsoever deriving from the previous bankruptcy reorganization." *See* pp. 11-12 *infra*.

Indeed, on January 7, 2004, a c*onvenio*, or reorganization agreement (the

"*Convenio*") had been approved, and Avanzit's *suspensión de pagos* then came to

a successful end. The "compulsory moratorium" and stay were lifted, and the

interventors appointed to oversee Avanzit's business were discharged. Judicial

control of the assets and affairs of Avanzit came to an end in early 2004. Avanzit

is a reorganized company, free of court supervision, that is traded on the Madrid

stock exchange with a market capitalization of € 1 billion.

Furthermore, the relief sought in the Petition could not be granted by this

Court, even if sought by a proper representative of a debtor subject to court

supervision. The Commission asks this Court to determine whether a setoff

exercised by BNPP Andes in Peru on September 30, 2002 (the "Setoff") was valid

under Spanish law. But, as a consequence of that Setoff, BNPP Andes holds no

assets of Avanzit, in the territorial jurisdiction of the United States or anywhere

else. Chapter 15 does not authorize any relief under these circumstances.

**STATEMENT OF THE CASE**

**A.      The Parties, the Mutual Underlying Obligations and the Setoff**

BNPP Andes is a Peruvian subsidiary of BNP Paribas and is incorporated as a *sociedad anónima* with registered offices in Peru. Vandekerkove Decl. ¶ 1.[2] On June 20, 2006, BNPP Andes applied to the *Superintendencia de Banca y Seguros del Peru*, the agency responsible for regulation of Peruvian banks, for permission to cancel its Peruvian banking license.  Permission was granted on October 18, 2006, and the winding down of the banking business of BNPP Andes in Peru commenced and is continuing.  Vandekerkove Decl. ¶ 3.

Avanzit, according to the Petition, is a telecommunications company that is "listed on the Madrid and Bilbao stock exchanges, leases a large office building in downtown Madrid for its management's offices, and, through its subsidiaries, employs approximately 5,600 people around the world.  The current stock market value of Avanzit is estimated to be over 1 billion €."  Pet. ¶ 10.  The Petition does not allege that Avanzit has any assets in, or other connection with, the United States.  Indeed, since the Petition alleges that the Setoff [3] has occurred, the

---

[2] References to "___Decl." are to the declarations of either Juan Miguel Goenechea, Spanish counsel to BNPP Andes, executed on January 11, 2008; Julio César Pérez Vargas ("Pérez"), Peruvian counsel to BNPP Andes, executed on January 14, 2008; Jean Michel Vandekerkove, manager of BNPP Andes, executed on January 11, 2008; or Luis Díez-Picazo y Ponce de León ("Díez-Picazo"), a Spanish law expert for BNPP Andes, executed on January 14, 2008.  Additional references are to the declaration of Rafael Figueroa, a representative of the Commission and the affidavit of Zack A. Clement, counsel to the Commission.

[3] The Petition contends that Avanzit transferred certain credits due under contracts valued at US$25 million to BNPP Andes (Pet. Ex. B, *Contrato de Cesion de Creditos*, or Credit Transfer Agreement, dated December 28, 2001 (the "CCC")), and that a US$25 million deposit was established in favor of Avanzit on the books of BNPP Andes (Pet. Ex. C, Time Deposit Account Opening Agreement, dated December 28, 2001 (the "TDA")).  Pet. ¶¶ 20-25.  The (…continued)

4

Petition acknowledges as a matter of law that no asset of Avanzit could—post-Setoff—be in the possession of BNPP Andes, in the territorial jurisdiction of the United States or anywhere else.

## B.     Avanzit's Temporary Insolvency Proceeding

On May 31, 2002, Avanzit filed a petition seeking a declaration of temporary insolvency, or *suspensión de pagos* proceeding (the "Spanish Insolvency Proceeding"), before the Madrid Court of First Instance No. 26 (the "Spanish Insolvency Court") under the Spanish 1922 Suspension of Payments Act. Pet. ¶¶ 11, 13.  On June 4, 2004, the Spanish Insolvency Court issued a ruling acknowledging the petition and nominating interventors to oversee Avanzit's assets and affairs.  *Id.* ¶¶ 1, 12-13.

Avanzit did not include BNPP Andes in either the preliminary or the final list of creditors to be affected by the *suspensión de pagos* proceeding.  Goenechea Decl. ¶ 5.  Because the lists submitted to the Spanish Insolvency Court did not include BNPP Andes, it was not sent filings in the Spanish Insolvency Proceeding. Goenechea Decl. ¶ 5.  In fact, BNPP Andes was not even entitled to consult the court file relating to the Spanish Insolvency Proceedings.  Díez-Picazo Decl. ¶ 20.

---

(continued…)
Petition further alleges, with respect to the underlying mutual obligations approximating US $25 million, that on September 30, 2002, BNPP Andes "(i) terminated the CCC and (ii) unilaterally setoff the amounts owed by BNPP Andes to Avanzit under the TDA Agreement against the amounts that BNPP Andes alleges Avanzit owed to BNPP Andes as a consequence of the termination of the CCC."  Pet. ¶ 28.  The cancellation of these mutual obligations is referred to herein as the "Setoff."  However, the Petition presents no competent evidence regarding the Setoff, as no party with knowledge has provided sworn testimony about the Setoff.

On January 7, 2004, the Spanish Insolvency Court issued an order that approved the *Convenio*, under which creditors included on the final definitive list agreed to receive certain payments from Avanzit, thereby concluding Avanzit's *suspensión de pagos*. Goenechea Decl. ¶ 6 and Ex. C;[4] Díez-Picazo Decl. ¶ 10. BNPP Andes was not a party to, nor is it bound by, the *Convenio*. Díez-Picazo Decl. ¶ 20.

Once the *Convenio* became final, on March 16, 2004, Avanzit was no longer under court supervision and control. Díez-Picazo Decl. ¶ 10. The receivers formerly appointed by the Court to oversee Avanzit's activities were discharged. Goenechea Decl. Exs. F and C(2) at Ruling. Avanzit resumed complete control of its assets and businesses, and all measures otherwise restricting the ability of creditors to seize Avanzit's assets or to seek enforcement against its assets ceased to apply. Díez-Picazo Decl. ¶ 12.

## C. Avanzit's Suit in Spain to Invalidate the Setoff and the Spanish Decision Dismissing Its Complaint

On March 31, 2003, several months after the Setoff, Avanzit sued BNPP Andes in the Madrid Court of First Instance No. 40 (the "Spanish Civil Court"), seeking a declaration that the Setoff was invalid under Spanish law. Goenechea Decl. ¶ 2 and Ex. A thereto. On September 3, 2003, BNPP Andes moved to dismiss the complaint for lack of jurisdiction. Goenechea Decl. ¶ 3 and Ex B. On March 30, 2004, two months after the Spanish Insolvency Court had approved the

---

[4] Exhibits in Spanish are provided with English translations. Where a reference is to Ex. __(2), the reference is to the English translation.

*Convenio*, the Spanish Civil Court issued a judgment (the "Spanish Judgment")

granting the motion to dismiss, and holding that the courts of Peru were the

proper forum for adjudication of the dispute. Goenechea Decl. ¶ 7 and Ex. D.

The Spanish Judgment stated, in relevant part, as follows:

"Having viewed the allegations of both parties the Court finds that
the motion [to dismiss for lack of jurisdiction] should be admitted
considering that being the defendant domiciled in Lima (Peru), the
plaintiff's claim has no connection whatsoever with the Spanish
forum since Spain is not the place where the obligations should be
fulfilled or complied with (because the set-off was made in a bank
account located in Peru) nor the place where the contractual
obligations among the parties were born (because, even if the
claimant bases his demand on the Credit Assignment Agreement
dated 12/28/2001 signed in Madrid and on the choice of the Courts
of Madrid as competent forum made in that agreement, the truth is
that the plaintiff's claim is related to the operation of a checking
account located outside of Spain in a bank that does not operate in
the country and from whom the plaintiff requires the nullification
of certain transactions made on his account; and that the plaintiff
does not ask for the termination or nullity of the Credit Assignment
Agreement and does not exercise any action concerning the
fulfillment of such agreement).

DECISION

To declare the lack of the jurisdiction of this court and of the
Spanish jurisdiction to adjudicate the issue outlined above, as it
corresponds to the COURTS OF LIMA (PERU)." Goenechea
Decl. Ex. D(2).

Avanzit did not appeal from the Spanish Judgment. Goenechea Decl. ¶ 7.

**D.      The Peruvian Litigation Involving the Setoff**

On March 29, 2004, BNPP Andes filed a complaint against Avanzit in the

26th Specialized Civil Court of Lima (the "Peruvian Civil Court") seeking a

declaration that the Setoff was valid under Peruvian law. Pérez Decl. ¶ 2 and Ex.

A (the "BNPP Andes Complaint"). On December 6, 2004, Avanzit responded to

the BNPP Andes Complaint and filed a counterclaim seeking a declaration that the Setoff was invalid. Pérez Decl. ¶ 3 and Ex. B (the "Avanzit Counterclaim"). Issue was joined when BNPP Andes filed its reply to the Avanzit Counterclaim. Pérez Decl. ¶ 4 and Ex. C. Avanzit has not challenged the Peruvian Civil Court's jurisdiction, and by filing its Counterclaim has irrevocably submitted to that Court's jurisdiction. Pérez Decl. ¶ 6.

Avanzit never filed an *exequatur* proceeding in the Peruvian courts to seek recognition of its insolvency proceeding, perhaps because the BNPP Andes Complaint was not filed in Peru until the *Convenio* had been approved by the Spanish Insolvency Court, by which time Avanzit was no longer subject to any insolvency proceeding in Spain. Pérez Decl. ¶ 7.

While the Petition contends that Avanzit has not received "any useful discovery" in Peru, Pet. ¶ 39, the BNPP Andes Complaint attached forty-five exhibits relevant to the underlying transaction and the Setoff, including emails between BNPP Andes and Avanzit, the transaction documents themselves, accounting entries reflecting the Setoff, and a report regarding the accounting entries reflecting the transaction and subsequent Setoff. Pérez Decl. ¶ 5.

In addition, in apparent contradiction of the representation made to this Court that "no prior application for this or similar relief has been made to this or any other court," Clement Aff. ¶ 15, it appears that Avanzit did seek *ex parte* provisional relief in Peru, to enjoin the closing down by BNPP Andes of its banking business, and to enjoin any transfer of funds held for the account of

Avanzit, as well as for additional discovery. Although the application and ruling were not made available to BNPP Andes, the Peruvian Civil Court apparently denied Avanzit's *ex parte* application. *See* Pérez Decl. ¶¶ 10-12.

After three years, the Peruvian case is now ripe for decision. On February 22, 2007, the Peruvian Civil Court issued Resolution No. 62, which listed the evidence to be considered, and closed the record to further evidence (the "Evidence Order").[5] The Peruvian Civil Court had previously issued, on November 4, 2005, an order entitled "Settlement and Issues in Controversy Hearing" (the "Issues Order"), which sets forth the issues in controversy:

"ISSUES IN CONTROVERSY

As to the main claim, to determine whether it is admissible to establish that the suspension of payments has immediate effect in Peru and if so, whether it is correct to apply article 132 paragraph 11 of the Law of Banks and article 226 of the General Law of the Financial Insurance System and the Organic Law of the Superintendence of Banking and Insurance (Law No. 26702); and whether it is admissible to declare the validity and enforceability of the set-off that the plaintiff Bank effected on September 30, 2002 in Avanzit's checking account No. 05161-000146-001-46.

As to the accessory claim, to determine whether it is admissible to legally declare that plaintiff Bank is not obligated to return to defendant any of the amounts that were deposited in defendant's checking account in plaintiff Bank as of the date of the aforementioned set-off.

As to the subordinate claim, to determine whether it is admissible to legally declare that plaintiff Bank has no obligation to return to defendant company any balance of the aforementioned checking account No. 05161-000146-001-46.

---

[5] The Evidence Order is subject to an interlocutory appeal, but neither the Evidence Order nor the proceedings have been stayed. Pérez Decl. ¶ 9 and Ex. E.

As accessory claim to the subordinate claim, to determine whether it is admissible to legally declare that plaintiff Bank is not obligated to return to defendant company any amount of its checking account, including the amounts paid in this account by plaintiff Bank as a consequence of the liquidation of the time deposit made on December 28, 2001.

As first counterclaim claim, to determine whether it is admissible to legally declare that the debit made by the countersued Bank on September 30, 2002, in the amount of US$25,487,072.92 (American dollars) in checking account No. 05161-000146-001-46 opened at the aforementioned Bank, was invalid and ineffective.

As second main counterclaim claim, to determine whether it is admissible to legally declare the set-off made by the countersued Bank on September 30, 2002, in checking account No. 05161-000146-001-46 at the aforementioned Bank invalid and unenforceable.

As accessory claim of the second counterclaim, to determine whether it is admissible to order the countersued Bank to deliver to counterclaiming company the sum of US$25,487,072.92 (American dollars).

As subordinate claim of the second counterclaim, to determine whether it is admissible to legally declare that the set off was invalid and ineffective whether or not this occurred through the checking account No. 05161-000146-001-46 at the aforementioned Bank.

As accessory claim of subordinate counterclaim, to determine whether it is admissible to order the countersued Bank to deliver to counterclaiming company the sum of US$25,487,072.92 (American dollars)." Pérez Decl. Ex. D(2).

**E.     The End of Avanzit's Temporary Insolvency Proceeding**

By the beginning of March 2004, Avanzit was no longer the subject of temporary insolvency proceedings.  As noted above, on January 7, 2004, the Spanish Insolvency Court had approved the C*onvenio* between Avanzit and its creditors, and on January 13, 2004, the *Convenio* had been published in the *Boletín Oficial de España*.  Goenechea Decl. ¶ 6.  The effect of the final approval of Avanzit's *Convenio* was to terminate the suspension of payments proceedings that affected Avanzit.  Díez-Picazo Decl. ¶ 11.  After the *Convenio* was approved, the interventors appointed by the Court to monitor the conduct of Avanzit's business were discharged. Díez-Picazo Decl. ¶ 12.

On January 29, 2004, Avanzit sent a current report to its securities regulator, the CNMV,[6] confirming that Avanzit was no longer subject to the Spanish Insolvency Proceedings:

> "Pursuant to the provisions of Article 82 of Law 24/84 of the Securities and Exchange Market and related provisions, and in order to make this information available to the public as a relevant fact, Avanzit, S.A. hereby reports that as a result of the court approval of the agreement and lifting of the bankruptcy reorganization that affected the company, and since the established procedural time periods have elapsed, the Bankruptcy Trustees that were appointed at one time HAVE BEEN DISCHARGED from their duties.   Thus, the company has recovered its full legal

---

[6] The CNMV's website is http://www.cnmv.es.  To access company filings posted on the website from the CNMV homepage, one clicks on "búsqueda por entidades" (search by entity) under "consultas a registros officials" (official registry inquiries).  The company name, or "Avanzit" in this case, is then entered in the search box provided.  Current reports are found under the category of "hechos relevantes" (relevant events); period reports are found under "información pública periódica" (public periodic information); prospectuses are found under "folletos de emisión y OPV" (prospectuses for issuances of securities); and annual financial statements are found under "auditorías" (audits).

capacity, and for the purpose of carrying out any acts of administration and/or disposal or encumbrance, it is not subject to any restrictions whatsoever deriving from the previous bankruptcy reorganization." Goenechea Decl. Ex. F(2) (emphasis in original).

In another statement, Avanzit declared that, "[i]n the opening months of the 2004 fiscal year, Avanzit, S.A. . . . obtained the corresponding final court decisions lifting the bankruptcy reorganization." Goenechea Decl. Ex. E(2). Avanzit made the same disclosure in its public regulatory filings more than a dozen times between January 7, 2004 and the end of 2007. Goenechea Decl. ¶ 10.

The *Convenio* dictates the amount of Avanzit's payment obligation, but does not establish a fund for payment. Goenechea Decl. Ex. C. Indeed, Avanzit's published balance sheets demonstrate that Avanzit has booked the obligations to its creditors as general obligations of its business. Goenechea Decl. Ex. G. The *Convenio* makes no mention of the Setoff, and mandates no action by Avanzit or the Commission to assert claims on behalf of creditors arising from the Setoff. Avanzit's published balance sheets demonstrate that the claim is booked as an Avanzit asset. Goenechea Decl. Ex. G.

The *Convenio* does delineate the Commission's limited mandate. The Commission was appointed to act as the representative of the creditors "for the sole purpose of Oversight and Control of strict compliance with the Agreement, and without this interfering in any way whatsoever with the operations and life of the Company's corporate bodies." Goenechea Decl. Ex. C(2) at Fifth. If Avanzit defaults in the performance of the Agreement, the Commission may take legal

action *against* Avanzit in order to compel performance. Díez-Picazo Decl. ¶ 17. The *Convenio* does not authorize the Commission to act *for* Avanzit.

**F.     BNPP Andes Has No U.S. Assets**

As previously noted, BNPP Andes is also undergoing a change in status. On October 18, 2006, following approval by the *Superintendencia de Banca y Seguros del Peru*, BNPP Andes began winding down its banking business. Vandekerkove Decl. ¶ 3.

In connection with its banking business, BNPP Andes had maintained a USDollar correspondent account with the New York branch office of BNP Paribas (the "Correspondent Account"). Vandekerkove Decl. ¶ 4. On January 3, 2007, in connection with the winding down of its banking business, BNPP Andes closed this account. Vandekerkove Decl. ¶ 5. BNPP Andes maintained no other US Dollar accounts in New York or elsewhere in the United States. Vandekerkove Decl. ¶ 4.

**G.     The September 2007 Application to the Spanish Court**

Despite the ongoing litigation between the parties in a court having jurisdiction over both Avanzit and BNPP Andes, on June 11, 2007, the Commission applied, *ex parte,* to the Spanish Insolvency Court, for appointment as a foreign representative and for authorization to file a Chapter 15 petition in the United States (the "*Ex Parte* Application"). Goenechea Decl. ¶ 11, Ex. H(2) at 6.[7]

_____

[7] BNPP Andes was not given notice of the *Ex Parte* Application, but obtained a copy from one of Avanzit's creditors only after the decision granting the Commission some of the *ex* (…continued)

The *Ex Parte* Application sought authority under Chapter 15 to "find out whether the 25 million dollars (plus interest accrued) are in fact deposited or have been deposited in the U.S. and, if so, to retrieve them and include them in the assets of the bankruptcy to the benefit of all the creditors." Goenechea Decl. Ex. H(2) at 4. The Commission asked the Court to declare that Avanzit is still in the "legal situation of temporary receivership," apparently because "no rogatory letters have been sent to courts that were notified of the application and subsequent declaration of the temporary receivership, or any orders issued to cancel the entries and registrations contained at the Registries." Goenechea Decl. Ex. H(2) at 5.[8] The Commission did not bring Avanzit's contrary public disclosures to the court's attention, nor did it refer to the Spanish Judgment dismissing Avanzit's suit against BNPP Andes for lack of jurisdiction.

On September 27, 2007, the Spanish Insolvency Court issued an order (the "Spanish *Ex Parte* Order") that parroted parts of the *Ex Parte* Application. *See* Pet. Ex. A. The Spanish *Ex Parte* Order authorized the Commission to appear as a foreign representative in order to request recognition of the suspension of payments proceeding as a main insolvency proceeding of Avanzit, with the

_____

(continued…)

*parte* relief the Commission had requested was thereafter made public by Avanzit. Goenechea Decl. ¶ 11.

[8] The *Convenio* required that the decision be (1) recorded in the Commercial Registry of Madrid, (2) conveyed to other courts that had been advised of the insolvency petition, and (3) published in official notices. Goenechea Decl. Ex. C(2) at Ruling; Díez-Picazo Decl. ¶ 13. The *Convenio* also preserved jurisdiction in the Spanish Insolvency Court "to settle any disagreement or dispute that may derive from the interpretation, enforcement and/or performance of this Agreement between Avanzit, Sociedad Anónima and its creditors[.]" Goenechea Decl. Ex. C(2) at Twelve.

objective of investigating facts relevant to the Setoff, and "attempting to recover said funds in order to subsequently permit this Court to decide the correct distribution thereof in conformity with Spanish law." Pet. Ex. A. at 4.[9]

## H.    The Chapter 15 Petition and *Ex Parte* Relief

The Commission then waited for several months before filing its Chapter 15 Petition and moving, again, for *ex parte* emergency relief.  The Commission alleged that "absent immediate injunctive relief, the Oversight Commission and the Debtor's creditors could suffer immediate irreparable harm," but failed to mention the relief denied in Peru.  Clement Aff. ¶ 3(a).  The Commission also told this Court that BNPP Andes has been "avoiding the Spanish Insolvency Court," Mem. at 13, even though a Spanish court more than three years ago dismissed Avanzit's suit against BNPP Andes for lack of jurisdiction in Spain.  This Court denied the Commission's request for provisional relief.  The Commission then moved for recognition.  The parties have agreed to address that issue as an initial matter.

---

[9] The Spanish Insolvency Court did not, however, authorize the Commission to seek all of the relief it had sought in the *Ex Parte* Application, further limiting the mandate of the Commission.  The Spanish Insolvency Court refused to declare that the proceeds of the Setoff were part of Avanzit's bankruptcy assets; refused to declare that BNP Paribas must return those proceeds; and refused to declare that any such proceeds of Avanzit were in the United States. *Compare* Goenechea Decl. Ex. H(2) (*Ex Parte* Application) *and* Pet. Ex. A (Spanish *Ex Parte* Order).

**ARGUMENT**

**THE CHAPTER 15 PETITION MUST BE DISMISSED**

No "foreign proceeding" is pending, the Commission is not a "foreign representative," and there is no asset of Avanzit in the territorial jurisdiction of the United States. The Petition should therefore be dismissed.

**A.     Dismissal or Summary Judgment Is Appropriate**

The material facts which form the basis for BNPP Andes' opposition to recognition of the Chapter 15 petition are found in court documents in various jurisdictions, and in Avanzit's public disclosures. The Commission does not, and cannot, dispute these facts. Therefore, dismissal or summary judgment is appropriate. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c); *In re Teligent Inc.*, 324 B.R. 479, 487 (S.D.N.Y. 2005) ("[O]nly disputes over facts that might affect the outcome of the suit will properly preclude summary judgment.") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *In re Jacobowitz*, 309 B.R. 429, 435 (S.D.N.Y. 2004) ("Summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.").

**B.     Recognition May Not Be Granted Under Chapter 15**

Chapter 15 was enacted in 2005 to bring the ancillary bankruptcy provisions of the United States Bankruptcy Code into conformity with recently enacted European legislation. Its provenance is described in a recent opinion of this Court:

"Chapter 15 of the Bankruptcy Code was enacted in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23 and implemented the Model Law on Cross-Border Insolvency (the "Model Law") promulgated by the United Nations Commission on International Trade Law (UNCITRAL); H.R. Rep. No. 109-31, at 105-07 (2005), U.S. Code Cong. & Admin. News 2005, p. 88; *In re Tri-Continental Exchange Ltd.,* 349 B.R. 627, 631-32 (Bankr. E.D. Cal. 2006).

Unique to the Bankruptcy Code, Chapter 15 contains a statement of purpose: '[t]he purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency,' with the express objectives of cooperation between United States courts, trustees, examiners, debtors and debtors in possession and the courts and other competent authorities of foreign countries; greater legal certainty for trade and investment; fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the debtor; the protection and maximization of the debtor's assets; and the facilitation of the rescue of financially troubled businesses. 11 U.S.C. § 1501(a)(1)-(5)*; In re SPhinX, Ltd.* 351 B.R. 103, 112 (Bankr. S.D.N.Y. 2006)*; aff'd,* 371 B.R. 10 (S.D.N.Y. 2007)." *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 126 (Bankr. S.D.N.Y. 2007).

### 1.     No Foreign Proceeding Is Pending

Under Chapter 15, an ancillary case is commenced when a "foreign representative" files a petition seeking recognition of a pending "foreign proceeding." 11 U.S.C. §§ 1504, 1515. A U.S. court may provide comity and cooperation only if recognition is granted. *Id.* § 1509(b) ("If the court grants recognition under section 1517, and subject to any limitations that the court may impose consistent with the policy of this chapter . . . a court in the United States shall grant comity or cooperation to the foreign representative."). As a very recent decision of this Court notes, "in contrast to the jurisprudence that

developed under section 304 that emphasized discretion and flexibility (and permitted U.S. judicial assistance for a wide array of judicial insolvency proceedings abroad), the new recognition regime under chapter 15 is quite rigid." *In re Basis Yield Alpha Fund (Master),* Case No. 07-12762 (REG), slip op. at 11 (Bankr. S.D.N.Y. Jan. 16, 2008).[10]

Recognition may be granted only after notice and a hearing.  11. U.S.C. § 1517(a).  "[R]ecognition under section 1517 is not to be rubber stamped by the courts.  This Court must make an independent determination as to whether the foreign proceeding meets the definitional requirements of sections 1502 and 1517 of the Bankruptcy Code."  *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. at 126.  *See also*, *In re Basis Yield Alpha Fund (Master), supra*, slip op. at 20-21 (adopting the *Bear Stearns* analysis).

The burden of establishing recognition of a foreign proceeding rests on the Petitioner.  H.R. Rep. No. 109-31, at 112 (2005); *In re Basis Yield Alpha Fund (Master), supra*, slip op. at 22 ("Both case law and legislative history confirm that the burden of proof as to each element of a petition for recognition is on the foreign representative"); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. at 128 ("The legislative history [of Chapter 15] explains that the word 'proof' [from the Model Law] was changed to

---

[10] A copy of this opinion is attached as exhibit A to the Declaration of Karen E. Wagner, counsel for BNPP Andes, executed on January 16, 2008.

'evidence' to make it clearer using United States terminology that the ultimate burden is on the foreign representative.").

To prove entitlement to recognition, a putative foreign representative must demonstrate that a foreign proceeding is "pending." As previously noted, Section 101(23) defines the term "foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23).

A foreign proceeding must be either a "foreign main" or "foreign nonmain" proceeding. *Id.* § 1517(1) (providing that an order granting recognition may be issued if the "foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of Section 1502[.]"). Section 1502 defines these terms to require that the proceeding be pending: "(4) 'foreign main proceeding' means a foreign proceeding *pending* in the country where the debtor has the center of its main interests; (5) 'foreign nonmain proceeding' means a foreign proceeding, other than a foreign main proceeding, *pending* in a country where the debtor has an establishment." *Id.* §§ 1502(4), 1502(5) (emphasis added). Under Chapter 15, the requirement that a

"foreign proceeding" be "pending" is explicit, unlike the wording of former Section 304. [11]

The Commission has failed to meet its burden of proving that the Spanish proceeding meets the definitions laid out in Section 1502, and because no foreign proceeding is "pending" the Chapter 15 petition is not entitled to recognition.

Avanzit underwent a temporary receivership proceeding that might well have qualified as a "foreign main proceeding"— but only while it was pending. Díez-Picazo Decl. ¶¶ 7-9. As Avanzit acknowledges in its own public disclosures, however, its insolvency proceeding ended in 2004 with final approval of Avanzit's *Convenio.* Goenechea Decl. Exs. E, F, G. Accordingly, Avanzit is not now the subject of "a collective judicial or administrative proceeding . . . under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, *for the purpose of reorganization or liquidation.*" 11 U. S. C. § 101(24) (emphasis added).

---

[11] In *In re Pet. of Bd. of Directors of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25, 49-50 (Bankr. S.D.N.Y. 1999), *aff'd*, 275 B.R. 699 (S.D.N.Y. 2002), this Court concluded, in a case under Section 304, that ancillary relief enjoining litigation that would hinder the efficacy of a Bermuda scheme of arrangement could be granted even though the scheme was effective and the case had been formally terminated. *Hopewell* is not applicable here—as the recent *Basis Yield* decision of this Court recognizes, Chapter 15 poses stricter requirements for recognition and assistance than did Section 304. *In re Basis Yield Alpha Fund (Master)*, *supra*, slip op. at 11. Under Section 304, there was no jurisdictional mandate that the foreign proceeding be "pending." Further, in *Hopewell*, the scheme could not be effectuated without the assistance of the U.S. court. Here, the *Convenio* does not create a fund or set forth any direction to any party, including particularly the Commission, to undertake any action to recover assets, and Avanzit's payment obligations are simply an obligation of the reorganized business.

### 2. The Spanish *Ex* Parte Order Does Not Control

The Commission may contend that the Spanish *Ex Parte* Order is the only authorization required for recognition. However, that Order cannot control this Court and cannot bind BNPP Andes.

First, this Court must make its own *de novo* determination as to whether the requirements of recognition under Chapter 15 have been met. As this Court today ruled, "the court determines that the section 1516 presumption [that the court may make presumptions about the existence of the foreign proceeding or foreign representative based upon a decision of the foreign court] exists for the purposes of speed and convenience, and to save stakeholders costs in straightforward cases, but does not tie the hands of a court to examine the facts more closely in any instances where the court regards the issues to be sufficiently material to warrant further inquiry." *In re Basis Yield Alpha Fund (Master)*, *supra*, slip op. at 22. *See, also, In re SPhinX, Ltd.*, 351 B.R. 103, 120 n.22 (Bankr. S.D.N.Y. 2006) (noting that even if a Cayman Court had declared its proceeding as the foreign main proceeding, a U.S. court nevertheless was required to make its own determination because a Cayman Court determination is not binding on the U.S. court), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007); *see also* Paul L. Lee*, Ancillary Proceedings Under Section 304 and Proposed Chapter 15 of the Bankruptcy Cod*e, 76 Am. Bankr. L.J. 115, 184 (2002) ("It appears that it will fall to the court in each enacting State that receives a petition for recognition from a foreign representative to determine whether the foreign representative is the

representative of the foreign main proceeding or a foreign nonmain proceeding.");
Andre J. Berends, *UNCITRAL Model Law on Cross-Border Insolvency: The UNCITRAL Model Law on Cross-Border Insolvency: A Comprehensive Overview*, 6 Tul. J. Int'l & Comp. L. 309, 355-56 (1998) (noting that to determine whether foreign proceeding is main or nonmain, "one should bear in mind that the opinion of the foreign court that opened the proceeding does not matter. . . . [T]o empower a foreign court that opens the proceeding to determine whether its proceeding should be labeled as a 'main' proceeding would interfere with the sovereignty of the enacting State.").

Second, even though the Spanish *Ex Parte* Order inexplicably adopted the misleading statement from the Commission's application that Avanzit "remains in the legal state of suspension of payments," Pet. Ex. A at 3, for the technical and highly formalistic reason that Avanzit failed to file relevant termination documents as directed by the Spanish Insolvency Court, this erroneous declaration does not constitute a finding that "the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23). As Avanzit has repeatedly stated to the CNMV and to the public, Avanzit is subject to no such control or supervision.

Indeed, the incongruity of recognizing the remnants of the Spanish Insolvency Proceeding as a "main" proceeding is demonstrated by the anomalous result that an automatic stay, and other protections and restrictions, would issue

with respect to the debtor and its property in the territorial jurisdiction of the

United States, even though Avanzit is subject to no stay, or other restriction, in its

own country.  *See generally,* 11 U.S.C. §§ 1520, 1521.  The Commission could

"operate the debtor's business and exercise the rights of a trustee," even though is

could not do either under Spanish law.  11 U.S.C. §§ 1520 (a)(3).  Recognition of

a foreign main proceeding would constitute a presumption that Avanzit was

insolvent, 11 U.S.C. § 1531, which, according to Avanzit's public filings, is not

the case.

The fact that the Spanish docket remains formally open so that the Spanish

Insolvency Court retains limited jurisdiction over Avanzit in the event Avanzit

fails to abide by the *Convenio* does not lessen the incongruity.  In the United

States, a bankruptcy court retains jurisdiction to enforce its orders, but that does

not create a shield, let alone a sword, for the reorganized debtor.  *Compare, e.g.*,

*Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991) ("Once the

bankruptcy court confirms a plan of reorganization, the debtor may go about its

business without further supervision or approval.  The firm also is without the

*protection* of the bankruptcy court.") (emphasis in original); *In re Craig's Stores

of Tex., Inc.*, 266 F.3d 388, 390-91 (5th Cir. 2001) (adopting a "more exacting

theory of post-confirmation bankruptcy jurisdiction" in which jurisdiction ceases

"other than for matters pertaining to the implementation or execution of the plan").

Importantly, the Spanish *Ex Parte* Order does not bind BNPP Andes, as it was issued without notice.[12]  Díez-Picazo Decl. ¶ 21.  "For more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified."  *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal marks and citation omitted); *see, also*, *Somportex, Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 443 (3d Cir. 1971) (in determining whether to recognize a foreign judgment, "[t]he polestar is whether a reasonable method of notification [was] employed and reasonable opportunity to be heard [was] afforded to the person affected.")  Indeed, as discussed, the Spanish Civil Court has ruled that there is no jurisdiction in Spain over this claim against BNPP Andes. Under these circumstances, the Spanish *Ex Parte* Order is especially egregious.

### 3.     The Petition Is Defective

Rule 1008 of the Federal Bankruptcy Rules requires that a Chapter 15 Petition be verified.  This Petition was verified by a person who has no personal knowledge of the Setoff.  Figueroa Decl. ¶ 3.  The verification requirement has therefore not been met.  *See, e.g., In re Grandote Country Club Co.,* 252 F.3d 1146, 1153 (10th Cir. 2001) (verified complaint has no evidentiary value if it contains facts which are not within the pleader's personal knowledge); *Morris v.*

---

[12] Under Spanish procedural law, where a party seeks to obtain any kind of relief that affects another party, it is mandatory that the latter be served with notice of the application, unless an emergency requires otherwise.  BNPP Andes was not notified, no emergency was, or could have been, claimed.  Therefore, under Spanish law, BNPP Andes is not bound by the order. *See* Díez-Picazo Decl. ¶ 21.

*City of N.Y.*, No. 05 Civ. 7368, 2007 U.S. Dist. LEXIS 14765, at *14 (S.D.N.Y. Mar. 1, 2007) (same); *In re Compania de Alimentos Fargo, S.A.,* 376 B.R. 427, 429, 436 (Bankr. S.D.N.Y. 2007) (where a motion to dismiss a petition is converted into one for summary judgment, a supporting affidavit must be made on personal knowledge and set forth facts that would be admissible into evidence); Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(e); Fed. R. Evid. 801, 802.

Further, Mr. Figueroa's declaration purports to put certain rules of Spanish law before this Court. Figueroa Decl. ¶¶ 24-27. Mr. Figueroa is not qualified as an expert on Spanish Law, and his statements are inadmissible under Rule 701 of the Federal Rules of Evidence. Fed. R. Evid. 701 ("If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.").

### 4. This Court Has No Personal Jurisdiction over BNPP Andes

The Commission's Chapter 15 Petition seeks to initiate an *in personam* action against BNPP Andes, but has failed properly to serve BNPP Andes with a summons, or otherwise establish jurisdiction.[13]

"A judgment *in personam* is a judgment that determines whether the defendant must do or refrain from doing some specific act, or pay the plaintiff a sum of money." 16 *Moore's Federal Practice* § 108.02 (3d ed. 1997). But

---

[13] The Commission may argue that recognition is sufficient to provide jurisdiction, but neither *in personam* nor subject matter jurisdiction could constitutionally be premised upon recognition alone.

personal jurisdiction over BNPP Andes has not been established.  BNPP Andes is not present in this jurisdiction and has not been served with a summons as required by Rule 7004(a) of the Bankruptcy Rules.  A court cannot render an *in personam* judgment against a defendant without first obtaining valid jurisdiction. *Pennoyer v. Neff*, 95 U.S. 714, 732-33 (1878) (holding that judgment of a court lacking personal jurisdiction violates the Due Process Clause of the Fourteenth Amendment), *overruled on other grounds by Shaffer v. Heitner*, 433 U.S. 186, 212 (1977).

A summons must be served for personal jurisdiction to attach.  Fed. R. Bankr. P. 7004(f) (providing that in an adversary proceeding, personal jurisdiction attaches upon service of summons); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend.")[14]  No such summons has been served on BNPP Andes.

## C.      The Commission Is Not a "Foreign Representative"

Because no "foreign proceeding" is pending, the Commission cannot satisfy its burden of showing that it is a "foreign representative."  A representative

---

[14] BNPP Andes also disputes venue in this District.  The Commission can only premise venue upon 28 U.S.C. § 1410(3), "the interests of justice and the convenience of parties," the more direct bases being entirely inapplicable.  The Commission cannot credibly contend that either objective is supported by litigation in this District in connection with a consummated foreign proceeding for the purposes of allowing the Commission to attempt to instigate litigation in Spain, where a suit against BNPP Andes has already been dismissed for lack of jurisdiction, and in competition with litigation by the former debtor already pending for three years in Peru.

of the creditor body cannot be a "foreign representative." Chapter 15 does not contemplate that a former debtor, and a post-confirmation committee, be authorized to act at the same time as dueling "foreign representatives" in two different jurisdictions with respect to the same claim.

The purpose of Chapter 15 is to provide "cooperation between United States courts, *trustees, examiners, debtors and debtors in possession* and the courts and other competent authorities of foreign countries[.]" *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund*, *Ltd.,* 374 B.R. at 126 (quoting 11 U.S.C. § 1501(a)(1)-(5) (emphasis added)). A foreign representative is a person or body authorized to administer the reorganization or the liquidation of the debtor's assets or affairs[.]" 11 U.S.C. § 101(24).

It is impossible for the Commission to meet that requirement because it was not in existence during the administration of Avanzit's *suspensión de pagos* proceedin*g,* but was created when that proceeding was successfully terminated by Avanzit's reorganization—precluding any claim that the Commission was created to "administer [Avanzit's] reorganization." The Commission is charged only with overseeing "strict compliance with the Agreement," and is prohibited from "interfering in any way whatsoever with the operations and life of the Company's corporate bodies." Goenechea Decl. Ex. C(2) at Fifth. And research has

disclosed no case, under Chapter 15 or Section 304, in which a creditor entity has been recognized as a foreign representative.[15]

Further, permitting the Commission to act for Avanzit would be completely unjustified. Chapter 15 is intended to "provide predictability to the financial community." *In re Basis Yield Alpha Fund (Master), supra,* slip op. at 26. Predictability will not be served if Chapter 15 is be read to permit a former debtor, and a post-confirmation committee, to litigate in two separate countries, against the same defendant, for the same funds. In Peru, Avanzit is seeking to have the Setoff declared invalid—for its own benefit. Perez Decl. Ex. B. Its published balance sheets demonstrate that Avanzit has booked the claim as its own asset. Goenechea Decl. Ex. G. While the Commission told the Spanish Insolvency Court, and this Court, that it was acting for the benefit of creditors, that claim is inconsistent with Avanzit's financial statements, and with its Peruvian litigation position.

## D.      The Relief Sought by the Commission Cannot Be Granted

In any event, the relief sought by the Petition cannot be granted by this Court. After exercise of the Setoff, no asset of Avanzit was in the possession of

---

[15] Foreign representatives have included boards of directors, liquidators and receivers. *See, e.g.*, *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. at 124 (joint provisional liquidators); *In re SPhinX, Ltd.*, 351 B.R. 103, 106 (S.D.N.Y. 2006) (joint official liquidators and joint provisional liquidators); *U.S. v. J.A. Jones Constr. Group, LLC*, 333 B.R. 637, 637-38 (E.D.N.Y. 2005) (appointed receiver). The same was true for section 304. *See e.g.*, *In re Parmalat Secs. Litig.*, 493 F. Supp. 2d 723, 726 (S.D.N.Y. 2007) (extraordinary administrator appointed when insolvency proceedings commenced), *aff'd*, 240 F. App'x 916 (2d Cir 2007); *In re Milovanovic*, 357 B.R. 250, 253 (Bankr. S.D.N.Y. 2006) (liquidator); *In re Bd. of Directors of Telecom Argentina, S.A.*, No. 05-17811 (BRL), 2006 Bankr. LEXIS 483, at *29, 61 (Bankr. S.D.N.Y. Feb. 24, 2006) (board of directors), *aff'd*, No. 06 Civ. 2352 (NRB), 2006 U.S. Dist. LEXIS 85274 (S.D.N.Y. Nov. 17, 2006).

BNPP Andes, within or without the territorial jurisdiction of the United States.

Moreover, comity suggests that deference to the Peruvian litigation is appropriate.

### 1. No Avanzit Asset Is in the United States

The scope of cooperation and comity that may be granted by a U.S. court

after recognition is set forth in Section 1521:

> "§ 1521. Relief that may be granted upon recognition
>
>> (a) Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including—
>>
>> \* \* \*
>>
>>> (5) entrusting the administration or realization of all or part of the debtor's assets within ***the territorial jurisdiction of the United States*** to the foreign representative or another person, including an examiner, authorized by the court[.]
>>>
>>> \* \* \*
>>
>> (b) Upon recognition of a foreign proceeding, whether main or nonmain, the court may, at the request of the foreign representative, entrust the distribution of all or part ***of the debtor's assets located in the United States*** to the foreign representative or another person, including an examiner, authorized by the court, provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected." 11 U.S.C. § 1521 (emphasis added).

There is no allegation, let alone any proof, that any asset of Avanzit is in

the United States.[16] Indeed, the Petition alleges to the contrary, since it alleges

---

[16] Jurisdiction under Chapter 15 cannot be bootstrapped by an argument that, if the Commission succeeds on its claim that the Setoff was invalid, then an asset of Avanzit will be in the United States. Jurisdiction must exist before the litigation commences. *Steel Co. v. Citizens* (…continued)

that the Setoff has occurred.  As a consequence, while Avanzit may possess a

claim that the Setoff was invalid, no Avanzit asset is in the hands of BNPP Andes.

*See Pioneer Commercial Funding Corp. v. United Airlines, Inc.*, 122 B.R. 871,

878  (S.D.N.Y. 1991) (finding "no authority" to support argument that funds

already set-off by creditor are property of debtor's estate); *Folger Adam Sec., Inc.*

*v. DeMatteis/MacGregor, J.V.*, 209 F.3d 252, 263 (3d Cir. 2000) (noting that the

only requirement for a finding that property subject to set-off is not part of

bankruptcy estate is that the set-off actually occurred); *U.S. v. Bank of Celina,* 721

F.2d 163, 167-68 (6th Cir. 1983) (noting that after a setoff, depositor has no

property interest in deposit account).

Under Chapter 15, a plenary case for Avanzit would have to be

commenced to provide authority for adjudication of this claim.

> "[T]he only property covered by this section [referring to Section
> 1520: Effects of Recognition of a Foreign Main Proceeding] is
> property within the territorial jurisdiction of the United States as
> defined in Section 1502.  To achieve effects on property of the
> debtor which is not within the territorial jurisdiction of the United
> States, the foreign representative would have to commence a case
> under another chapter of this title." H.R. Rep. No. 109-31, at 114-
> 15.

---

(continued…)
*for a Better Env't*, 523 U.S. 83, 94 (1998) (rejecting the doctrine of "hypothetical jurisdiction" and
holding that, without jurisdiction, the court cannot proceed); *Lerman v. Bd. of Elections,* 232 F.3d
135, 142 n.6 (2d Cir. 2000) (finding that district court erred in deciding the merits before
addressing threshold question of jurisdiction); *see also Kuhali v. Reno*, 266 F.3d 93, 100-01 (2d
Cir. 2001) ("[T]o say that a court possesses the authority to ascertain its jurisdiction over a matter
is not tantamount to saying that the legislature has designated the court as a forum for resolution
on the merits of those issues that happen to underlie the jurisdictional inquiry.").

The Commission does not appear to have authority to commence a plenary case, and presumably that is not part of Avanzit's business strategy.

Finally, there is no basis whatsoever for injunctive relief. To obtain equitable relief, the Commission must show "first, irreparable injury, and, second, either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships. . . ." *Northwest Airlines Corp. v. Ass'n of Flight Attendants-CWA*, 483 F.3d 160, 165 (2d Cir. 2007) (quoting *Green Party v. N.Y. State Bd. of Elections*, 389 F.3d 411, 418 (2d Cir. 2004)). The Commission concedes that a Setoff occurred in 2002. As a consequence, Avanzit may have at most a claim for damages if the Setoff is declared invalid. Injunctive relief will not be granted on a claim for damages. *See Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1998) (for a preliminary injunction to issue, the "movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages") (quoting *Shapiro v. Cadman Towers, Inc.* 51 F.3d 328, 332 (2d Cir. 1995)); *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) ("[W]here monetary damages may provide adequate compensation, a preliminary injunction should not issue.").

Further, the Commission has no judgment against BNPP Andes that would support any restraint against BNPP Andes. *See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 320-21 (1999) (courts of equity

lack the power to enjoin a party's use of its assets unless a creditor has obtained a judgment establishing the debt).

Finally, the Commission has waited a very long time to seek injunctive relief in this Court. The Setoff was five years ago. Litigation has been pending for several years, in two countries. Avanzit is long out of bankruptcy. The Commission's delay suggests a total lack of any emergency. *See Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985) (seven month delay indicated "an absence of the kind of irreparable harm required to support a preliminary injunction") (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d. Cir. 1985)); *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 390 (S.D.N.Y. 2003) (noting that six-year delay in filing a complaint "tends to indicate at least a reduced need for such drastic, speedy action" as a preliminary injunction) (quoting *Citibank, N.A.*, 756 F.2d at 276).

## 2. Comity Requires Recognition of the Spanish Court's Order and Deference to the Peruvian Litigation

The Spanish Court has ruled that the validity of the Setoff must be decided in Peru. This decision is *res judicata* as to the parties to that litigation, Avanzit and BNPP Andes.[17] Díez-Picazo Decl. ¶ 25. No appeal was taken by Avanzit.

---

[17] It is also *res judicata* as to the Commission. Díez-Picazo Decl. ¶ 26. The Commission's interests (assuming it indeed represents Avanzit) were adequately represented in the litigation brought by Avanzit. *Amalgamated Sugar Co. v. NL Indus.*, 825 F.2d 634, 640 (2d Cir. 1987) ("A finding of privity . . . depends on whether, under the circumstances, the interests of the nonparty were adequately represented."); *NLRB v. Donna-Lee Sportswear Co.*, 836 F.2d 31, 35 (1st Cir. 1987) (finding that privity existed between two parties because their interests were virtually identical and could not be disassociated from one another).

*See* Goenechea Decl. ¶ 7.  The ruling of the Spanish Court is therefore entitled to deference under principles of comity.  *See Cunard S.S. Co. v. Salen Reefer Servs. A.B.*, 773 F.2d 452, 457, 460 (2d Cir. 1985) (granting comity to foreign judgment where rendered by competent court and parties were given opportunity to defend); *see generally Hilton v. Guyot*, 159 U.S. 113, 205-206 (1895) (same); Restatement (Third) of Foreign Relations Law § 481 (1986) (instructing that the same standards apply in recognizing decisions of foreign courts as in recognizing decisions of other jurisdictions in the United States).  Any decision by this Court to the effect that the validity of the Setoff must be decided in the Spanish courts would likely be unenforceable in Spain, in any event.  Díez-Picazo Decl. ¶¶ 22, 27.

Deference to the Peruvian litigation is also appropriate.  The parties have been litigating in Peru for several years, without jurisdictional objection, and the case is approaching its conclusion.  Under these circumstances, this Court should exercise "comity among courts" and abstain from issuing a decision that would interfere with the Peruvian case.  *See Int'l Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1329 (Fed. Cir. 2001) ("[C]omity may be viewed as a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state—the so-called comity among courts"); *Pravin Banker Assocs. v. Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997) ("Under the principles of international comity, United States courts ordinarily refuse to review acts of foreign governments and defer to

proceedings taking place in foreign countries. . . ."); *Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 93 (2d Cir. 2006) (noting that "special" or "additional" circumstances are required when abstaining from hearing a matter that is subject to a parallel *in personam* proceeding in a foreign jurisdiction).

**CONCLUSION**

For the above reasons, BNPP Andes respectfully requests that its motion to dismiss or for summary judgment dismissing the Petition be granted.

Dated: New York, New York
January 16, 2008

Respectfully submitted,
DAVIS POLK & WARDWELL

By:   /s/ Karen E. Wagner
Karen E. Wagner (KW 3451)
James L. Kerr (JK 3900)
John D. Couriel (JC 4049)
Alicia C. Llosa (Al 0724)

*bnppa.ch15@dpw.com*

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000

Attorneys for BNP Paribas Andes, S.A.